Filed 7/23/25  In re Aaron M. CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re AARON M., a Person Coming Under the Juvenile Court Law. | B340859 |
| _____ LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 23CCJP01498A) |
| Plaintiff and Respondent, | |
| v. | |
| AARON M., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Philip L. Soto, Judge.  Affirmed.

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, County Counsel, Kim Nemoy, Assistant County Counsel, and Sarah Vesecky, Deputy County Counsel, for Plaintiff and Respondent.

―――――――――――――

Aaron M. (father) appeals from an order terminating parental rights to his two-year-old son.  Father's sole contention is that the juvenile court and the Los Angeles County Department of Children and Family Services (DCFS) conducted an inadequate inquiry of the family's possible Indian ancestry as required by the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) and related state law (Welf. & Inst. Code, § 224.2).[1]  We find no prejudicial error, and thus we affirm the order terminating parental rights.

## FACTUAL AND PROCEDURAL BACKGROUND

### I.  Dependency proceedings; termination of parental rights.

Father and Meredith K. (mother) are the parents of Aaron M., who was born in April 2023.  Aaron tested positive for fentanyl and morphine at birth and was placed in the neonatal intensive care unit to address his severe withdrawal symptoms, including sweating, labored breathing, tremors, poor feeding, loose stools, and sensitivity to touch.  Hospital staff reported that Aaron was difficult to console and cried for hours at a time while

---

[1]     All subsequent undesignated statutory references are to the Welfare and Institutions Code.

the staff tried to soothe him. He was administered phenobarbital and morphine to address his withdrawal symptoms.

Mother left the hospital when Aaron was three days old. DCFS removed Aaron from father and mother the following day.

DCFS filed a petition that, as subsequently amended, alleged that Aaron was a juvenile court dependent pursuant to section 300, subdivisions (b) and (j), because mother used amphetamines, methamphetamines, and fentanyl during her pregnancy; Aaron tested positive for methamphetamines and fentanyl at birth; father had a history of drug use and failed to protect Aaron from mother's drug use; and Aaron's sister, B., was a juvenile court dependent due to mother's and father's drug use. The juvenile court detained Aaron from his parents, and in July 2023, Aaron was placed with nonrelative caregivers D.K. and V.S.

The court sustained the amended petition in July 2023. In August 2023, the court bypassed reunification services for both parents pursuant to section 361.5, subdivisions (b)(10) and (11), on the grounds that parental rights to Aaron's sibling had been terminated after the parents failed to reunify with her.

The court terminated parental rights to Aaron in September 2024. He remains placed with his caregivers, D.K. and V.S., who plan to adopt him.

3

## II. Facts relevant to the Indian Child Welfare Act (ICWA).

### A. ICWA inquiry in Aaron's sibling's case.[2]

Aaron's sibling, B., was born drug-exposed in 2020. The parents failed to reunify with B., and parental rights were terminated in October 2022.

Both parents appealed from the order terminating parental rights. In September 2023, at the joint request of the parents and DCFS, this court conditionally affirmed the order with directions to the juvenile court to conduct a further ICWA inquiry. Specifically, we ordered the court to direct DCFS to "make reasonable efforts to interview [B.'s] known and available extended family members," including maternal grandmother Linda K., paternal grandmother Renee S., paternal aunt Cindee M.,[3] and the maternal and paternal grandfathers, regarding the family's possible Indian ancestry.

The maternal grandmother died in 2023 and thus could not be interviewed. In October 2023, a social worker contacted the maternal grandfather to ask about the family's Indian ancestry. Maternal grandfather did not answer the call, and the social worker could not leave a message because maternal grandfather did not have voice mail. The social worker contacted mother to ask whether maternal grandfather had a new phone number, but

---

[2] At DCFS's request, we granted judicial notice of four documents describing the ICWA inquiry and findings in the sibling's case.

[3] It is not clear from the record whether Cindee M. is father's sister or aunt.

mother did not answer her phone. The social worker attempted to call and text maternal grandfather several more times, but the text was returned and the phone calls did not go through.

Also in October 2023, a social worker contacted the paternal grandmother, Renee S., and asked whether the family had any Indian ancestry. The paternal grandmother responded: "There is NO Indian heritage in my families' ancestry, nor does [paternal grandfather] Steven M[.] I do not have his phone number, but I will try to get it for you."

In early November 2023, the paternal grandmother reported that the paternal grandfather may not have a phone, but she provided a phone number for paternal grandfather's sister, Mary G. The social worker contacted Mary G. and left a detailed message with a call-back number.

In December 2023, the social worker contacted paternal aunt Cindee M., who reported the family had no Indian ancestry.

On January 10, 2024, the juvenile court held a hearing and found ICWA did not apply to B.'s case. No appeal was taken from that finding.

### B. ICWA inquiry in the present case.

During their first interview with a social worker in April 2023, both parents denied having any Indian ancestry. The parents again denied Indian ancestry during court appearances in May 2023, August 2023, December 2023, April 2024, and September 2024.

The social worker spoke to paternal grandmother Renee S. and paternal aunt Cindee M. in March 2024; both women denied that the family had Indian ancestry. The paternal grandmother said she did not know where paternal grandfather lived and she did not have a telephone number for him, but to her knowledge,

he did not have Indian ancestry. There is no evidence in the record that DCFS attempted to get a phone number for paternal grandfather through any other source or contacted any member of mother's extended family.

## III. Father's appeal.

Father timely appealed from the order terminating parental rights.

## DISCUSSION

Father's sole contention on appeal is that the order terminating parental rights should be reversed with directions to conduct a further ICWA inquiry. Specifically, father contends that additional inquiry was required of the maternal and paternal grandfathers, a paternal uncle, and "any other maternal or paternal relatives who could be identified as having relevant information concerning [Aaron's] ancestry." The contention lacks merit, as we discuss.

## I. Legal standards.

### A. Duty of inquiry.

"In 1978, Congress enacted the Indian Child Welfare Act (ICWA; 25 U.S.C. § 1901 et seq.) to 'formalize[ ] federal policy relating to the placement of Indian children outside the family home.' " (*In re Dezi C.* (2024) 16 Cal.5th 1112, 1124–1125 (*Dezi C.*); see also *In re Kenneth D.* (2024) 16 Cal.5th 1087, 1097–1098 (*Kenneth D.*).) The California Indian Child Welfare Act (§§ 224 et seq.) is ICWA's state analog.

Section 224.2, subdivision (b) specifies that once a child is placed into a county welfare department's temporary custody, the agencies and juvenile courts have "an affirmative and continuing

6

duty" to determine whether ICWA applies. This duty "includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child." " '[E]xtended family member' " means "a person who has reached the age of eighteen and who is the . . . child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2); see also § 224.1, subd. (c) [adopting ICWA definition of "extended family member"].)

The statutory duty to inquire of extended family members is grounded in a legislative recognition that " 'younger generations [may] lack[ ] knowledge of their Native American ancestry,' " and thus parents "may not be the best source of information about a child's Indian ancestry." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1139.) Our high court has cautioned, however, that the statute " 'does not require the agency to "find" unknown relatives and others who have an interest in the child, merely to make reasonable inquiries. The operative concept is those people who are reasonably available to help the agency with its investigation into whether the child has any potential Indian ancestry should be asked.' " (*Id.* at p. 1140; see also *id.* at p. 1143 [characterizing duty of inquiry under ICWA as " 'slight and swift' "].) Accordingly, reversal is not required simply because "every possible extended family member has not been asked about the child's Indian ancestry." (*Id.* at p. 1140.)

## B. Standard of review.

Our Supreme Court has said that a juvenile court's "fact-specific" determination that an ICWA inquiry "is adequate,

7

proper, and duly diligent" is " 'a quintessentially discretionary function' (*In re Ezequiel G.* (2022) 81 Cal.App.5th 984, 1005) subject to a deferential standard of review. (§ 224.2, subd. (i)(2); see also *Kenneth D.*, *supra*, 16 Cal.5th at [pp. 1101–1102].) ' "On a well-developed record, the court has relatively broad discretion to determine whether the agency's inquiry was proper, adequate, and duly diligent on the specific facts of the case." ' " (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

"If, upon review, a juvenile court's findings that an inquiry was adequate and proper and ICWA does not apply are found to be supported by sufficient evidence and record documentation as required by California law (rule 5.481(a)(5)), there is no error and conditional reversal would not be warranted even if the agency did not inquire of everyone who has an interest in the child." (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.) However, " 'the less developed the record, the more limited that discretion necessarily becomes. When . . . the court's implied finding that the agency's inquiry was proper, adequate, and duly diligent rests on a cursory record and a patently insufficient inquiry that is conceded, the only viable conclusion is that the finding is unsupported by substantial evidence and the court's conclusion to the contrary constitutes a clear abuse of discretion.' " (*Kenneth D.*, *supra*, 16 Cal.5th at pp. 1101–1102.)

## II. Analysis.

Father contends an inadequate ICWA inquiry was made in the present case, and we agree. As noted above, an ICWA inquiry that "extend[s] no further than mother and father, both of whom have longstanding issues with substance use disorder[s]," will rarely be adequate, particularly if extended family members are readily available. (*Dezi C.*, *supra*, 16 Cal.5th at p. 1141.)

8

Here, no inquiry was made of any of mother's relatives, and there was no showing in Aaron's case that maternal relatives were unavailable. The juvenile court thus erred by finding that DCFS made an adequate ICWA inquiry.

We conclude, however, that the juvenile court's error was harmless.[4] In Aaron's sibling's case, which was proceeding concurrently with Aaron's case, a social worker repeatedly called and texted the maternal grandfather to inquire about the family's possible Indian ancestry, but maternal grandfather did not answer the call and did not have voice mail. The social worker left a message for mother asking if maternal grandfather had a new phone number, but mother did not answer or return the call. The only other maternal relative who mother identified was the maternal grandmother, who was deceased. No other avenues for

---

[4] In *Kenneth D.*, *supra*, 16 Cal.5th 1087, 1094–1095, 1103, our Supreme Court held that that absent exceptional circumstances, a reviewing court may not consider postjudgment evidence to conclude that ICWA error was harmless because "California's comprehensive scheme implementing ICWA contemplates the juvenile court will make the threshold determinations as to adequate inquiry and reason to know." Accordingly the high court said, "[a] reviewing court's determination that a postjudgment ICWA inquiry was sufficient substitutes its judgment for that of the juvenile court, which is to make those findings in the first instance." (*Id*. at p. 1103.) That holding does not preclude our consideration of the evidence and findings in Aaron's sibling's case because that evidence was reviewed by the juvenile court, which exercised its discretion to find that DCFS had conducted an adequate ICWA inquiry and that ICWA did not apply.

contacting maternal grandfather or any other maternal relative appear from our record.

With regard to father's family, the social worker asked paternal grandmother for paternal grandfather's contact information, but she did not have it. Paternal grandmother said, however, that paternal grandfather did not have Indian ancestry. Subsequently, paternal grandmother reported that paternal grandfather did not have a phone, but she provided a phone number for paternal grandfather's sister, Mary G. The social worker contacted Mary G. and left a detailed message with a call-back number. A social worker also contacted paternal aunt Cindee M., who reported the family had no Indian ancestry.

The juvenile court concluded in Aaron's sibling's case in January 2024 that DCFS had conducted an adequate inquiry and that ICWA did not apply to that case. That finding was supported by substantial evidence—namely, by evidence that (1) DCFS had spoken to, or made reasonable efforts to attempt to speak to, all known extended family members on both sides of the family, and (2) all of the extended family members with whom DCFS had spoken denied Indian ancestry.

We conclude, moreover, that reversing for a further ICWA inquiry in this case would contribute to an "endless feedback loop of remand, appeal, and remand" that our Supreme Court has cautioned against. (See *Dezi C.*, *supra*, 16 Cal.5th at p. 1140.) As described above, we previously conditionally affirmed the termination of parental rights in the sibling's case for DCFS to make an ICWA inquiry of the maternal and paternal grandmothers, the maternal and paternal grandfathers, and paternal aunt Cindee M. DCFS made an inquiry of the paternal grandmother and two paternal aunts; was unable to inquire of

10

the maternal grandmother because she was deceased; and attempted without success to contact the maternal and paternal grandfathers.  We decline to reverse and remand for yet *another* attempt to contact the grandfathers.

## DISPOSITION

The order terminating parental rights is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

EDMON, P. J.

We concur:

ADAMS, J.

HANASONO, J.